# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 21, 2015 Session

## STATE OF TENNESSEE v. MICHAEL WISE

### Appeal from the Criminal Court for Sullivan County
#### No. S61337    R. Jerry Beck, Judge

_____

### No. E2014-00712-CCA-R3-CD – Filed June 4, 2015

_____

The Defendant, Michael Wise, pleaded guilty to sexual battery by an authority figure, a Class C felony.  *See* T.C.A. § 39-13-527 (2014).  The trial court sentenced him as a Range I, standard offender to three years' confinement in the Tennessee Department of Correction.  On appeal, the Defendant contends that the court abused its discretion by denying him alternative sentencing and that a presumption of reasonableness should not apply to its findings.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Mark D. Harris, Kingsport, Tennessee, for the appellant, Michael Wise.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Barry P. Staubus, District Attorney General; and Julie Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 24, 2014, the Defendant entered a best interest guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to sexual battery by an authority figure.  At the guilty plea hearing, the State summarized the basis for the plea: Bristol police officers responded to Windsor Avenue on August 16, 2012, regarding a reported sexual assault.  The victim, the Defendant's stepdaughter, told police that four to six months earlier, the Defendant entered her bedroom, slipped his hand down her pants, and touched her.  She

told officers that a few days after this incident, the Defendant again entered her bedroom and touched her similarly. The victim told her mother of the incident, but her mother told her that the Defendant was taking medications and could not recall the incident.

The victim told the police that she and the Defendant previously were in a vehicle together and that he told her that one of his sexual fantasies was to "sleep with a virgin" and that he wanted her to "finger herself." She refused.

The Defendant told the police that the victim had recently confided in him that she was having "issues with her sexuality." The Defendant was taking antidepressant and anxiety medications and was having odd dreams, thoughts, and hallucinations. The Defendant told the police that one night around February 1, he awoke and that while walking around his house, he accidentally went into the victim's bedroom. The Defendant lay down on the victim's bed, positioned himself against the victim, and put his hand down her pants, touching the bare skin of her vagina.

The Defendant stipulated to the factual basis for the guilty plea, and the trial court accepted the plea and imposed the agreed three-year sentence.

At the sentencing hearing on April 11, 2014, a presentence report, a sex offender risk assessment report, and a victim impact statement were received as exhibits. The Defendant did not testify.

The presentence report contained information relating to the incident and the Defendant's background. The investigating officer's initial version of the incident showed that the Defendant could not remember the incident due to the medications he was taking. The Defendant explained that the victim had recently "come out about being a lesbian" and admitted to him that she and her girlfriend touched each other sexually while in a restroom at school. The victim also said a boy at school told her about his fantasy of sleeping with a virgin. The Defendant said every man had the same dream. He then told his wife about the victim's statements and informed the victim that he would alert the school about the victim's sexual acts. The victim said she would call the police.

In the Defendant's statement provided to the police on August 22, 2012, and included in the report, the Defendant said that his doctor began changing his medications in January 2012. He explained that the reason he touched the victim's vagina was because he thought he was in his own bedroom. Once the Defendant realized the victim was not his wife, he left the victim's bedroom. A few days later, the Defendant's wife asked the Defendant about the incident, and out of embarrassment, he replied that he did not remember the incident but that if it occurred, it was due to his medications. The

Defendant told the police that he was sorry for what he did, that he did not mean to touch the victim's vagina, and that he did not ask the victim to touch herself sexually in front of him.

The report showed the thirty-seven-year-old Defendant had previous convictions for petit larceny in Virginia at age eighteen and for traffic offenses that occurred between ages twenty-two and thirty-seven. The Defendant completed the tenth grade but did not graduate or obtain a high school equivalency certificate.

The report showed the Defendant's mental health was fair while his physical health was good. The Defendant took Paxil for anxiety and depression. The Defendant suffered from knee pain, hypertension, high triglycerides, arthritis, and degenerative disk disease. As a juvenile, the Defendant received treatment for behavioral problems. The Defendant reported that his only use of alcohol occurred when he and his wife celebrated their anniversary, and he denied any illegal drug use. He never sought or received psychiatric treatment or mental health counseling.

The Defendant had been married for twelve years and had two biological children, who were in the fourth and seventh grades. He reported that if granted probation, he would continue to live with his wife and two children. The victim had been living with her aunt since August 2012.

The Defendant was currently employed as a driver and had worked for almost nine years. He chose not to give a statement for the presentence report.

The sex offender risk assessment report contained the statement the Defendant made during a clinical interview, in which he denied engaging in sexual contact with the victim. The victim, whom the Defendant had known since she was three years old, was fifteen at the time of the allegations. The Defendant stated that after the victim told her mother about the incident, the victim's mother asked the victim "if she wanted her to tell the authorities and she said no," that he bought an alarm for the victim's door, and that he believed the victim reported him because she was angry with him and wanted him out of the house in order to "run over her mother and do what she want[ed]." He explained that he signed the police statement under duress and due to threats by the officer to take his other two children. The Defendant claimed that during the police questioning, he was not asked if he would like an attorney present.

The risk assessment report also showed the Defendant's polygraph examination verified that he was truthful when he stated during the clinical interview that he did not engage or attempt to engage in sexual contact with the victim. The Defendant also

3

denied engaging in sexual contact with minors since turning eighteen years old, and no other allegation of sexual abuse had been made against him.

The report showed the Defendant functioned within the below average to average range of intelligence. The Defendant was "[j]ust about deaf" in his right ear, had no difficulties with his vision, and had not been given a formal mental health diagnosis. He denied having a history of hallucinations.

The Defendant stated that he first "use[d]" alcohol and marijuana at age seventeen or eighteen, last used alcohol around age thirty-three, and last used marijuana at age eighteen or nineteen. The risk assessment report noted the Defendant's prior record included a domestic assault in 2001, although the report does not reflect whether the Defendant was convicted.

The Defendant reported that he was physically and emotionally abused by his stepfather. The Defendant reported that his relationship with his sister was good and denied having difficulty with developing honest, intimate relationships with people his age.

The risk assessment report showed the Defendant was tested and determined to have deviant sexual arousal responses to minors. The Defendant exhibited "clinically significant arousal" to six- to twelve-year-old females in "persuasive scenarios" and thirteen- to seventeen-year-old males in persuasive scenarios.

The report concluded that the Defendant presented a "[l]ow risk to sexually act out" and that he could be treated in an outpatient program in the community with the appropriate structure and support. The report also recommended family therapy as well as ongoing therapy and medication management treatment.

The victim impact statement showed the victim believed she was once able to trust the Defendant as her own father but no longer knew him. She did not have "much of a relationship" with her mother or her siblings since the incidents occurred, and her family was "torn to shreds" because of the Defendant's actions. She feared that the Defendant would return her to that "awful reality." She was having "horrible nightmares" that brought her to tears and was seeing a counselor because of the "emotional hurt."

The trial court noted the Defendant's age, statements to the police, previous convictions, education, health, employment history, and finances. Relative to the Defendant's employment, defense counsel clarified that the Defendant had changed employment and was a machinist at the time of the sentencing hearing. Relative to the

Defendant's previous convictions, the court noted the most serious crime was the misdemeanor theft, for which the Defendant received twelve months' probation.

The trial court noted the sex offender risk assessment report was "fairly favorable . . . in regards to reoffending." Defense counsel then mentioned the Defendant passed a polygraph examination and explained that the Defendant entered a best interest guilty plea because he did not think he could overcome his admission and did not want to put the victim through a trial. The court noted it would consider the victim's emotional stress.

The trial court found as follows:

> The Defendant gave [a statement which] I've read portions of it into the record as to when he confessed to the police. He basically said he did it. Said he did it because [his] doctor was changing his medications around. It's detailed.
>
> . . . .
>
> But in this case I'm going to send the Defendant back with two other children that . . . he intends to live with . . ., as I understand it. And he admitted to the . . . police he did it. He denied he did it to the Counseling & Consultation Services . . . .
>
> I just can't be assured what the outcome would be. If it wasn't for that factor, I would place him on supervised probation. . . .
>
> I'm going to deny probation, all forms and kinds.

This appeal followed.

The Defendant contends that the trial court abused its discretion by denying him alternative sentencing and that the presumption of reasonableness should not apply to its findings. He argues that (1) the court failed to properly consider the sex offender risk assessment report as "persuasive" and (2) the court failed to consider the purposes and principles of sentencing. The State responds that the court properly considered the purposes and principles of sentencing and properly concluded that the circumstances of the offense and the presence of the Defendant's children in his home weighed against alternative sentencing. Alternatively, the State argues that a de novo review of the record supports the denial of alternative sentencing.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654.

Relative to the Defendant's first argument that the trial court should have regarded the sex offender risk assessment report as persuasive, the Defendant explains that

> the examiner had substantial doubt that the offense with which [the Defendant] was charged and convicted actually occurred . . . . [T]he trial court reached an erroneous conclusion constituting a breach of discretion by finding the conflict between the statement [the Defendant] gave to the police and his adamant denial of sexual contact with [the victim] should be held against him. . . . It was therefore reversible error for the trial court not to have weighed the likelihood the offense had not been committed based upon the sentencing phase evidence, especially in the context of an [*Alford*] plea. . . .

6

. . . [The Defendant] consistently denied having engaged or attempted to engage in sexual contact with [the victim] and passed [the polygraph examination] confirming his denial for risk assessment purposes. The professional examiner did not question the reliability of the polygraph examination results.

(internal citations omitted).

The Defendant, thus, does not argue in his brief that the trial court should have found the sex offender risk assessment report persuasive because the report showed that he presented a low risk to reoffend and could be treated in the community. Rather, the Defendant argues that the court should have "weighed the likelihood the offense had not been committed based upon the sentencing phase evidence," i.e., the methodology, results, and opinion of the professional examiner. To decide the offense had not been committed, the examiner would have had to rely upon the results of the polygraph examination. Our supreme court has explicitly held, however, that neither polygraph examination results nor parts of a risk assessment report relying upon such results may be the basis for a sentencing decision. *See State v. Pierce*, 138 S.W.3d 820, 821 (Tenn. 2004) (holding that "[b]ecause polygraph examinations are inherently unreliable, . . . trial courts may not consider polygraph examination results or any portion of a risk assessment report that relies upon polygraph examination results when imposing sentences").

The record reflects that the trial court mentioned but did not rely upon the results of the polygraph examination. The court was correct not to base its decision upon the results, and the Defendant's argument is without merit.

The Defendant's second argument is that the trial court failed to consider the purposes and principles of sentencing. While the record reflects that the court noted the Defendant's inconsistent statements and proposed living environment, the record does not reflect the court's adequate consideration of the purposes and principles of sentencing contained in Tennessee Code Annotated sections 40-35-102 or 40-35-103. As a result, we find a de novo review of the record appropriate.

In conducting a de novo review, this court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the

potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

We have considered the aforementioned factors as well as the purposes and principles of sentencing. *See* T.C.A. § 40-35-102, -103, -210(b). Based upon our de novo review, we initially note the Defendant, a Range I, standard offender sentenced to three years for a Class C felony, would be eligible for probation and would be considered a favorable candidate for alternative sentencing, absent evidence to the contrary. *See id*. §§ 40-35-303(a), -102(6)(A) ("A defendant who does not fall within the parameters of subdivision (5), and who is . . . [a] standard offender convicted of a Class C . . . felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]"). We further note that although the record reflects the Defendant's multiple traffic offenses and a single petit larceny conviction, the record does not reflect a long history of criminal conduct, a need for deterrence, or the frequent or recent unsuccessful application of measures less restrictive than confinement. *See id*. § 40-35-103(1)(A)-(C). The record, however, shows that the thirty-seven-year-old Defendant pleaded guilty to an especially shocking, reprehensible, or offensive offense: intimate sexual contact with his teenage stepdaughter. *See id*. § 40-35-103(1)(B); *see also State v. Max Eugene Martin*, No. 01C01-9609-CR-00415, 1998 WL 188856, at *4 (Tenn. Crim. App. Apr. 20, 1998) (citing *State v. Jackie B. Richardson*, No. 85-140-III, 1985 WL 4044, at *1 (Tenn. Crim. App. Dec. 4, 1985) ("Clearly, the sexual abuse of a nine (9) year old child is especially shocking, reprehensible, and offensive.")). The need to avoid depreciating the seriousness of the offense weighs against probation. *See id*. § 40-35-103(1)(B).

Even though the sex offender assessment reports the Defendant as a low risk to sexually reoffend and that he could be treated in the community, the Defendant's providing inconsistent versions of the incident also weighs against probation. *See* T.C.A. § 40-35-103(5). In the Defendant's first statement to the police, he said he could not remember the incident due to his medications. About one week later, the Defendant admitted to the police that he touched the victim's vagina. Finally, during the clinical interview, the Defendant denied engaging in any sexual contact with the victim. Given these inconsistences, the Defendant was untruthful in at least one statement, which supports the denial of probation. *See State v. Sharp*, 327 S.W.3d 704, 716 (Tenn. Crim. App. 2010) (stating that a "trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation" under Tennessee Code Annotated section 40–35–103(5)). Untruthfulness alone is sufficient for the denial of probation. *See State v. Dowdy*, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994)

(stating that "untruthfulness of a defendant can be the basis for a denial of probation" and explaining that it would be "unrealistic to assume that someone who has just pled guilty to a felony conviction, who then offers perjured testimony to the court, denies any criminal wrongdoing for the offense for which they have just pled, and is in general unrepentant is someone who could immediately return to their community").

The Defendant's reported sexual arousal to minors is also relevant for sentencing purposes and weighs against probation. *See Pierce*, 138 S.W.3d at 827 (considering "the defendant's sexual attraction to minors, as documented in his risk assessment," as a factor supporting the denial of probation where the defendant pleaded guilty to attempted rape of a child). Here, the sex offender risk assessment report reflects that the Defendant exhibited clinically significant sexual arousal to six- to twelve-year-old females in persuasive scenarios and thirteen- to seventeen-year-old males in persuasive scenarios. Although the Defendant had a low risk to reoffend, the presence of two young children within the home would increase the likelihood he would act on his arousal to minors documented in the risk assessment report. Accordingly, based upon the above considerations, we determine that the Defendant should be ordered to serve his sentence in the Department of Correction. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE